# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO.: 08-60294 -CIV-HUCK-O'SULLIVAN

DONALD BAKER,

       Plaintiff,

v.

THE CITY OF HOLLYWOOD, a political
subdivision of the State of Florida, *et al*,

       Defendants.

_____/

## OMNIBUS ORDER ON DEFENDANTS' MOTIONS TO DISMISS

THIS CAUSE is before the Court upon the following Motions:

1)     Broward County's Motion to Dismiss Plaintiff's Verified Complaint, filed March 28, 2008 (D.E. #8);

2)     The City of Hollywood's Motion to Dismiss, filed March 31, 2008 (D.E. #10);

3)     Michael Satz, Scott Raft, and Brad Edwards' Motion to Dismiss, filed April 3, 2008 (D.E. #15);

4)     Howard Finkelstein's Amended Motion to Dismiss, filed April 4, 2008 (D.E. #17);

5)     Al Lamberti's Motion to Dismiss, filed April 14, 2008 (D.E. #29);

6)     Madeleine Torres' Motion to Dismiss, filed April 15, 2008 (D.E. #34);

7)     Joseph Companion and Jimmy Smith's Motion to Dismiss, filed April 18, 2008 (D.E. #37);

8)     Forrest Jeffries, Francis Hoeflinger, and Barbara Mannix's Motion to Dismiss, filed May 5, 2008 (D.E. #50);

9)     John Graham's Motion to Dismiss, filed May 7, 2008 (D.E. #58);

10)     Larry Schweiker's Motion to Dismiss, filed May 30, 2008 (D.E. #71).

# I. PROCEDURAL AND FACTUAL BACKGROUND[1]

On April 18, 2003, Plaintiff was being held at the City of Hollywood Police Department after an arrest.  While detained he witnessed two City of Hollywood police officers use force upon another detainee, Dennis Shelter, without provocation.  When Plaintiff verbally protested this use of force one of the officers, Francis Hoeflinger, punched Plaintiff in the face.  At this point the other officer, John Graham, placed Plaintiff in handcuffs and forced him to the floor.  Then both Hoeflinger and Graham kicked and punched Plaintiff and slammed his face into the concrete floor for more than a minute while Plaintiff lay on the floor and offered no resistance.  Two deputy sheriffs of Broward County, Joseph Companion and Jimmy Smith, observed this incident and did not intervene.  Either Companion or Smith (the Complaint does not specify which) retreated town a hallway to guard the entrance to the room in which Plaintiff was being held, to ensure no one would enter.  As a result of this use of force, Plaintiff had to be hospitalized for four days for treatment of his injuries, some of which were permanent.  In their police report of this incident, Hoeflinger and Graham falsely stated that Plaintiff "charged" Hoeflinger and knocked him down, and that Plaintiff ripped Graham's radio from his belt and threw it across the room.

Surveillance cameras captured the officers' use of force on Plaintiff.  City of Hollywood police officers Forest Jeffries (as alleged, Jeffries is in charge of the Internal Affairs Department for the City of Hollywood Police Department) and Robbie Knapp altered and "falsified" the surveillance videotape of the incident described above.  This altered video was provided to the state attorney's office as part of the charging package ("charging package video").  On September 12, 2003 Plaintiff's stepfather received copies of the surveillance videos pursuant to a public records request, which had been altered and "falsified" as well ("public records request video").  As alleged, the City of Hollywood withheld other surveillance videos that would have corroborated Plaintiff's version of events.

---

[1] This factual background is derived from Plaintiff's Complaint, as the factual allegations in a complaint must be taken as true when reviewing a motion to dismiss.

Plaintiff was charged with battery on a law enforcement officer, resisting arrest, and depriving an officer of his means of communication in an emergency. *See* Information, D.E. #38-2.[2] Plaintiff pled not guilty to these charges, and Madeleine Torres, an assistant public defender for the 17th Judicial Circuit, was appointed to represent him.

On September 29, 2003 Torres viewed the public records video and gave a copy to Brad Edwards, the assistant state attorney prosecuting Plaintiff. Also on September 29, 2003 Defendant Howard Finkelstein (the Public Defender for the 17th Judicial Circuit) viewed the public records video and the charging package video and appointed assistant public defender Larry Schweiker as co-counsel for Plaintiff. Within a couple of days, Edwards, Torres, and Schweiker viewed the two videos in slow motion, and knew them to have been "falsified." Subsequent to this viewing, Torres, Schweiker, and Finkelstein lost their copy of the charging package video "by design."

Plaintiff's criminal trial took place on April 27, 2004. At this point, the City of Hollywood, all City of Hollywood police officers named in the Complaint, Torres, Schweiker, Michael Satz (the State Attorney for the 17th Judicial Circuit), and Edwards knew that the video evidence against Plaintiff had been falsified. Further, Edwards acted with City of Hollywood police officer Robbie Knapp to create another altered surveillance video, which they showed to Torres and Schweiker just prior to the trial. At trial neither Torres nor Schweiker raised the issue of the altered videos. Torres and Schweiker also intentionally failed to present a defense at trial - for example, they intentionally did not request a jury instruction as to self-defense, and did not call a video expert witness. Hoeflinger, Graham, Smith, and Companion all gave false testimony at Plaintiff's trial, and Smith and Companion gave false testimony in pretrial depositions as well.

---

[2] Under the "incorporation by reference" doctrine, "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (citations omitted). Here, Lamberti, Companion, and Smith filed the following documents in support of their Motions to Dismiss: the information against Plaintiff, the jury's verdict form, the judgment form against Plaintiff, and a copy of the agreed order in which Plaintiff withdrew his motion for postconviction relief. *See* D.E. #38, Exs. 1-4. As these documents are central to Plaintiff's claims, and not disputed by Plaintiff, the Court will consider them in this Omnibus Order.

Plaintiff was found guilty of battery on a law enforcement officer (Compl. ¶ 59).  According to the Complaint, Plaintiff was not convicted of the other charges against him.  *Id.; see also* D.E. #38-3.  On December 28, 2004 Plaintiff was sentenced to five years imprisonment.  Plaintiff appealed his conviction to the Fourth District Court of Appeal based on ineffective assistance of counsel.  That court affirmed the conviction without prejudice for Plaintiff to file a motion for postconviction relief.  *See Baker v. State*, 937 So. 2d 297 (Fla. 4th DCA 2006).  Plaintiff did file a motion for postconviction relief with the trial court seeking to vacate his conviction and sentence under Florida Rule of Criminal Procedure 3.850.  However, on November 6, 2007 he voluntarily withdrew his motion pursuant to an agreed order to mitigate his five-year sentence to time served, or three and one half years.  According to Plaintiff, he appealed his withdrawal to the Fourth District Court of Appeal in Case Number 4D07-4895, which is pending.

On March 3, 2008 Plaintiff, who is pro se, brought the following claims as described in his Complaint: Count I for "conspiracy against the rights of the plaintiff" against all Defendants; Count II for "deprivation of plaintiff's constitutional right to due process of law, a fair and impartial trial, and reasonably effective assistance of counsel" against Finkelstein, Torres, Schweiker, Satz, and Edwards; Count III for "deprivation of plaintiff's constitutional right to due process of law and a fair and impartial trial" based on "alteration of evidence, perjury, and intentional loss of, or secreting, exculpatory evidence" against the City of Hollywood, Hoeflinger, Knapp, Graham, Torres, Schweiker, Finkelstein, Jeffries, Raft, Satz, and Edwards; Count IV for "deprivation of plaintiff's constitutional right to due process of law and a fair and impartial trial" based on "suppression of exculpatory evidence" against the City of Hollywood and Raft; Count V for excessive force, failure to intervene, and perjury against Hoeflinger, Graham, Companion, Smith, Lamberti, Raft, and Edwards; Count VI for "deprivation of liberty" against all Defendants (apparently on the same bases as Counts II and III); Count VII for "First Amendment, and conspiracy to thwart detection civil RICO, retaliation against a witness" against the City of Hollywood, Graham, Hoeflinger, Knapp, and Jeffries; Count VIII for injunctive relief against the City of Hollywood, Finkelstein, and Satz; and Count IX for declaratory relief against the City of Hollywood.  Counts I through VII were brought under 42 U.S.C. §§ 1983 and 1986, and 18 U.S.C. 1512(a)(2)(B)(i), (ii), and (iv).  Plaintiff also invoked the

Racketeer Influenced and Corrupt Organizations Act ("RICO") at 18 U.S.C. § 1961 *et seq.* in the preamble to his Complaint.  *See* Compl. at 3.

As of this date, all named Defendants except for Robbie Knapp have moved to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6) or 12(b)(1).  This Omnibus Order addresses the motions to dismiss listed above.

## II. MOTION TO DISMISS STANDARD

In reviewing a motion to dismiss, all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts must be taken as true.  *See, e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994).  "As a general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a motion to dismiss."  *S. Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 409 n.10 (11th Cir. 1996).

Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 335 U.S. 41, 47 (1957)).  However, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

This circuit imposes a heightened pleading standard on claims under 42 U.S.C. § 1983 brought against individuals or entities capable of asserting a qualified immunity defense.  *See GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998); *Swann v. S. Health Partners, Inc.*, 388 F.3d 834, 838 (11th Cir. 2004).  Under the heightened pleading standard, the plaintiff must go beyond the notice pleading standard of Rule 8 and "allege with some specificity the facts which make out [his or her] claim."  *GJR Invs.*, 132 F.3d at 1367.  Indeed, "[s]ome factual detail in the pleadings is necessary to the adjudication of § 1983 claims" where the defendant may assert qualified immunity.  *Id.*

Further, in general, "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  *Trawinski v. United Techs.*, 313 F.3d 1295, 1297 (11th Cir. 2002) (quoting *Tannenbaum v. U.S.*, 148 F.3d 1262, 1263 (11th Cir.

5

1998)).  Indeed, "[c]ourts do and should show a leniency to pro se litigants not enjoyed by those with the benefit of a legal education."  *GJR Invs.*, 132 F.3d at 1369.  However, "even in the case of pro se litigants this leniency does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action."  *Id.* (internal citations omitted).

### III. ANALYSIS

#### A.     Broward County

Plaintiff sues Broward County in Count I for "conspiracy" to violate his constitutional rights to due process, equal protection under the law, to be free from cruel and unusual punishment, and to a fair trial.  Plaintiff also sues Broward County in Count VI for "deprivation of liberty," alleging that Broward County and all other named Defendants "cover[ed] up the acts of Graham and Hoeflinger through the use of false evidence, perjury, false police reports, and withholding potentially exculpatory evidence."  Plaintiff invokes 42 U.S.C. §§ 1983 and 1986, as well as 18 U.S.C. § 1512(a)(2)(B)(i), (ii), and (iv) as the bases for these claims.

#### 1.     *Heck v. Humphrey*

To the extent Plaintiff's claims impugn the constitutionality of his criminal trial, they run afoul of *Heck v. Humphrey*.  512 U.S. 477 (1994).  In that case, the Supreme Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. . . . Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 486-87. The purpose of this "favorable termination" requirement is to "limit the opportunities for collateral attack on state court convictions because such collateral attacks undermine the finality

of criminal proceedings and may create conflicting resolutions of issues." *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995). In sum, when a state prisoner seeks damages under section 1983, the court "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487.[3]

Here, Plaintiff was charged with battery on a law enforcement officer, resisting arrest, and depriving an officer of his means of communication in an emergency. Compl. ¶ 14. He was ultimately found guilty of battery on a law enforcement officer on April 27, 2004. D.E. #38-3, 4. Plaintiff was apparently not convicted of resisting arrest or of depriving a law enforcement officer of his means of communication in an emergency. *Id.* Plaintiff now seeks to recover from Broward County based on violation of his rights to due process and fair trial, alleging that Broward County (and all other named Defendants) "cover[ed] up the acts of Graham and Hoeflinger through the use of false evidence, perjury, false police reports, and withholding potentially exculpatory evidence."

In general, the right to a fair trial in state court stems from the procedural sphere of the Fourteenth Amendment's due process clause. *See Danforth v. Minn.*, 128 S. Ct. 1029, 1034 (2008) ("[The Fourteenth Amendment] is the source of this Court's power to decide whether a defendant in a state proceeding received a fair trial - i.e., whether his deprivation of liberty was 'without due process of law.'"); *see also, e.g.*, *Porter v. White*, 483 F.3d 1294, 1303 (11th Cir. 2007). Where Plaintiff invokes the use of "false evidence" at trial, this falls under the Fourteenth Amendment. *See Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959) ("[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment. . . . The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.") (internal citations omitted). Where Plaintiff invokes his right to exculpatory evidence, he invokes his due process rights under

---

[3] *Heck* also applies to section 1985 claims. *See. e.g.*, *Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1319 (M.D. Fla. 2005) (applying *Heck* bar to the plaintiff's claim under section 1985 that the defendants conspired to interfere with his criminal trial by intimidating him and witnesses favorable to his defense); *see also, e.g.*, *Lanier v. Bryant*, 332 F.3d 999, 1005-06 (6th Cir. 2003) (applying *Heck* to the section 1985 claims); *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) (same).

the Fourteenth Amendment as well.  *See Brady v. Md.*, 373 U.S. 83, 87 (1963) ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

Insofar as Plaintiff seeks to recover based on violation of his due process rights at his criminal trial, those claims are *Heck*-barred.  Such recovery would necessarily impugn his conviction for battery upon a law enforcement officer pursuant to that trial.  Even if Plaintiff was not convicted of *all* of the crimes with which he was charged - he was apparently not  convicted of resisting arrest and depriving a law enforcement officer of his means of communication - he cannot recover on the basis of those charges under *Heck* any more than he can recover on the basis of the battery charge. This is because all of the charges against Plaintiff were based on the same event and prosecuted in the same trial, and Plaintiff's allegations concerning the violation of his due process rights challenge the constitutionality of the *entire* trial.  For example, Plaintiff alleges that Broward County, along with every other Defendant, fabricated incriminating evidence in the form of surveillance videos, offered perjured testimony, and suppressed evidence that would support his version of events at the City of Hollywood police station rather than Hoeflinger and Graham's version of events.  Recovering on the basis of these allegations would necessarily call into question the constitutionality of the entire criminal trial - and thus the constitutionality of his battery conviction.

The case *St. Germain v. Isenhower* provides some guidance in this respect.  98 F. Supp. 2d 1366 (S.D. Fla. 2000).  There, the plaintiff was acquitted of burglary with a battery and of kidnapping, but convicted of the lesser-included offenses of misdemeanor battery and false imprisonment.  *Id.* at 1367.  Although the plaintiff claimed he only sought relief under section 1983 based on the charge of which he was acquitted, the court held that claim *Heck*-barred.  *Id.* at 1372. This was because the plaintiff "allege[d] unlawful behavior (e.g., perjury) that would also undermine his convictions on the lesser-included offenses," and thus "the difficulty of parallel litigation over the issues of probable cause and guilt and the danger of conflicting resolutions arising out of the same or identical transaction exist[ed] in [that] case just as they did in Heck."  *Id.*  In this case, the charges against Plaintiff were separate offenses, based on different Florida criminal statutory provisions.  *See* D.E. #38-2.  However, Plaintiff alleged government conduct in the course of the trial

that, if true, would impugn the constitutionality of the entire trial, and thus undermine his conviction for battery of a law enforcement officer.  *See also, e.g.*, *Manthey v. Hunter*, 81 Fed. Appx. 560, 561 (6th Cir. 2003) (although the plaintiff argued he sought to recover based on charge of which he was acquitted, not charges of which he was convicted, such claim was *Heck*-barred because he "did not restrict his [allegations of unlawfulness] to that aspect of the defendants' actions"); *Higgins v. City of Tulsa, Okla.*, 103 Fed. Appx. 648, 651 (10th Cir. 2004) (affirming *Heck* bar for claims related to charge of which the plaintiff was not convicted, where a "reasonable reading" of the complaint implied the invalidity of his state convictions - the "gist" of the complaint was "that the pretrial and trial process was fraught with government misconduct" which led to his convictions and sentence).

Plaintiff argues that because he is no longer incarcerated and thus a habeas corpus action is no longer available to him, his claims should not be *Heck*-barred.  *See, e.g.*, D.E. #43 at 16, 21.  It appears that the Supreme Court has not passed on this question.  In *Heck*, the Court stated, "[w]e think the principle barring collateral attacks [on criminal convictions] - a longstanding and deeply rooted feature of both the common law and our own jurisprudence - is not rendered inapplicable by the fortuity that a convicted criminal is no longer incarcerated."  *Heck*, 512 U.S. at 490 n.10. However, in a later decision, *Spencer v. Kemna*, "a combination of five concurring and dissenting Justices agreed in dicta that 'a former prisoner, no longer in custody, may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy.'" *Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir. 2007) (quoting *Spencer v. Kemna*, 523 U.S. 1, 21 (1998)).  The Eleventh Circuit also has not passed on this question.  *See Abusaid v. Hillsborough County Bd. of County Comm'rs*, 405 F.3d 1298, 1315 n.9 (11th Cir. 2005) (noting that the Eleventh Circuit "has not yet weighed in" on the issue of "whether Heck bars § 1983 suits by plaintiffs who are not in custody and thus for whom habeas relief is not available"); *Vickers v. Donahue*, 137 Fed. Appx. 285, 289 (11th Cir. 2005) (noting "we have not explicitly ruled on whether a plaintiff who has no federal habeas remedy available to him may proceed under § 1983 despite the fact that success on the merits would undermine the validity of, in this case, an order of revocation and the resulting nine month sentence").

Here, the Court need not inquire as to whether Plaintiff has been deprived of a means of challenging his conviction and weigh whether there should be an exception to the *Heck* bar. This is because Plaintiff *did* seek postconviction relief at the state level but voluntarily withdrew such claims, "including, but not limited to, allegations the State presented false evidence at trial, the Hollywood Police Department failed to provide access to the original videotape, and former trial counsel provided ineffective assistance." D.E. #38-5; *see also* Compl. ¶ 76. In exchange for abandoning his request for postconviction relief, Plaintiff's original sentence was mitigated to three and one half years time served. *Id.* The Eleventh Circuit's unpublished decision in *Vickers* provides some guidance here. 137 Fed. Appx. 285. There, the court held that "the *Heck* bar appli[ed] to [the plaintiff's] claim despite the unavailability of habeas relief." *Id.* at 290. One of the court's main considerations in reaching this result was that the plaintiff was not without a remedy to seek relief from his sentence of imprisonment, as he could have appealed the order imposing that sentence. Likewise, even though a habeas corpus action is currently unavailable to Plaintiff here, he was not without an avenue to seek relief from his conviction. Moreover, according to Plaintiff he is still actively seeking relief from his conviction - an appeal of his withdrawal of his motion for postconviction relief is currently pending. Compl. ¶ 76.

In sum, to the extent Plaintiff's claims against Broward County are based on violation of his due process rights at trial, they are subject to dismissal without prejudice to be refiled if and when they accrue by virtue of a favorable resolution of his battery conviction. *See Heck*, 512 U.S. at 489-90 ("[A] § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.").[4] As discussed

_____

[4] The Court notes that besides *Heck*, there may be another reason Plaintiff cannot litigate his due process claims. In the agreed order reducing his sentence to time served, Plaintiff "withdr[ew] and renounced all claims" raised in his motion for postconviction relief, "including, but not limited to, allegations the State presented false evidence at trial, the Hollywood Police Department failed to provide access to the original [surveillance] videotape, and former trial counsel provided ineffective assistance." D.E. #38-5. Unless Plaintiff's withdrawal of such arguments is overturned, Plaintiff may be barred from making them by something akin to Florida's "accord and satisfaction" doctrine. *See, e.g.*, *Martinez v. S. Bayshore Tower*, LLLP, 979 So. 2d 1023, 1024 (Fla. 3d DCA 2008) ("An accord and satisfaction results when: (1) the parties mutually intend to effect a settlement of an existing dispute by entering into a superseding agreement; and (2) there is actual performance in accordance with the new agreement.").

below, Plaintiff's claims against Broward County suffer from other defects relating to pleading requirements and the applicable statute of limitations.

2.        **Pleading Issues, Statute of Limitations, and** *Monell*

It is unclear on what basis Plaintiff seeks to recover for "conspiracy" from Broward County in Count I.  Section 1985 provides a cause of action for "conspiracy to interfere with civil rights," and the provision that would seem most applicable to the alleged facts of this case and the language in Count I is section 1985(3).  Insofar as Plaintiff seeks to recover for conspiracy against Broward County based on section 1985(3), that claim is subject to dismissal.  To state a claim under section 1985(3), there "must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.  The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  Here, Plaintiff offers no allegations that there was some "class-based, invidiously discriminatory animus" behind Broward County's actions.  *Id.*  To the extent Plaintiff seeks to recover based on the last part of section 1985(2), that claim is subject to dismissal for the same reason.  Section 1985(2) provides a cause of action for conspiracy to obstruct justice in any state or territory, but it likewise requires some class-based discriminatory animus.

Section 1986 provides a cause of action against anyone who has "knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do."  42 U.S.C. § 1986.  "Section 1986 claims are therefore derivative of § 1985 violations." *Park v. City of Atlanta*, 120 F.3d 1157, 1159-60 (11th Cir. 1997).  "Section 1986 requires only that [the alleged participants] knew of a § 1985 conspiracy and, having the power to prevent or aid in preventing the implementation of the conspiracy, neglected to do so." *Id.* at 1160.  Because Plaintiff failed to state a cause of action under section 1985, he likewise fails to state a cause of action under section 1986.

In any case, section 1986 includes an explicit time limit for filing a claim thereunder - that section provides that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."  "At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears

11

beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n.13 (11th Cir. 2005) (internal quotations and citations omitted). In general, "[s]tatutes of limitations embody the recognition that the defendant's interest in promptly facing the plaintiff's claims along with the court's interest in hearing only claims that a plaintiff has diligently pursued can trump the plaintiff's right to assert even the most meritorious of claims." *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006). Here, Plaintiff's allegations in Count I relate to his trial, which was held on April 27, 2004. Plaintiff filed his Complaint on March 3, 2008 - well past the one-year deadline. Thus, on the face of the Complaint, this claim is time-barred.

Section 1983 also provides a cause of action for conspiracy. "[T]o sustain a conspiracy action under § 1983 . . . a plaintiff must show an underlying actual denial of [his] constitutional rights. In addition, the plaintiff must prove that the defendants reached an understanding to deny the plaintiff's rights." *Hadley v. Gutierrez*, --- F.3d ----, No. 06-12605, 2008 WL 1947008, at *6 (11th Cir. May 6, 2008) (internal quotations and citations omitted). However, under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), in order to sue a municipality such as Broward County under section 1983, Plaintiff must allege a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997). Indeed, in order to impose section 1983 liability on a municipality, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *Canton*, 489 U.S. at 388). Regardless of whether a plaintiff attempts to state a claim under section 1983 by alleging a policy or a custom, he must also identify an official who speaks with "final policymaking authority for [the municipality] concerning the act alleged to have caused the particular constitutional violation in issue." *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1330 (11th Cir. 2003). Plaintiffs may not seek to impose liability on a municipality merely by alleging acts of its employees, under a theory of *respondeat superior*. *See Bd. of County Comm'rs v. Brown*, 520 U.S. at 403 ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*."). Here, Plaintiff has not alleged *any* facts suggesting Broward County had an official policy or widespread custom that caused a

12

violation of his constitutional rights, nor has he identified the appropriate Broward County policymaker.  Thus, he fails to state a cause of action under section 1983 against Broward County.[5]

Additionally, insofar as Plaintiff seeks to recover from Broward County pursuant to 18 U.S.C. § 1512(a)(2)(B)(i), (ii), and (iv), those claims must be dismissed.  "In order to seek redress through § 1983 . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal law."  *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (citation omitted).  Nothing in 18 U.S.C. § 1512 suggests that it creates a private right of action.  *See, e.g.*, *Del Elmer; Zachay v. Metzger*, 967 F. Supp. 398, 403 (S.D. Cal. 1997) ("Civil causes of action, however, do not generally lie under the criminal statutes contained in Title 18 of the United States Code."); *Gipson v. Callahan*, 18 F. Supp. 2d 662, 668 (W.D. Tex. 1997) (holding the plaintiff had no private cause of action under 18 U.S.C. § 1512) (citations omitted).

**B.      City of Hollywood**

Plaintiff sues the City of Hollywood in Counts I and VI, as well as in Counts III and IV for violation of his rights to due process and fair trial.

**1.      *Heck*, Pleading Issues, and *Monell***

Because Counts III and IV seek relief on essentially the same basis as Counts I and VI, all four Counts against the City are subject to dismissal based on *Heck* to the extent they impugn his criminal conviction, the pleading requirements of section 1985 and section 1986, the statute of limitations for section 1986, and the absence of a private cause of action for under 18 U.S.C. § 1512(a)(2)(B)(i), (ii), and (iv).  *See supra* section III.A.  Moreover, because Plaintiff does not offer any allegations that the City of Hollywood had an official policy or widespread custom responsible for the alleged violation of his rights, his section 1983 and 1985 claims against the City are subject to dismissal based on *Monell*.  436 U.S. 658; *see supra* section III.A.

**2.      Statute of Limitations**

One of Plaintiff's section 1983 claims against the City is subject to dismissal for an additional reason.  In Count VII, Plaintiff seeks to recover under section 1983 against the City of Hollywood based on retaliation for exercising his First Amendment rights - specifically, for when

---

[5] *Monell* applies to section 1985 claims as well.  *See Hamm v. Members of Bd. of Regents of State of Fla.*, 708 F.2d 647, 650 (11th Cir. 1983).

Plaintiff was allegedly subjected to excessive force in retaliation for objecting to Hoeflinger and Graham's mistreatment of Dennis Shelter. "The test for a Section 1983 retaliation claim for violation of the First Amendment, whether by a private citizen or a prisoner is that one must show (1) constitutionally protected conduct, (2) retaliatory conduct adversely affecting the protected speech and (3) a causal connection between the retaliatory actions and the adverse effect on speech." *Smith v. Bell*, No. 06-60750, 2008 WL 868253, at *1 (S.D. Fla. Mar. 31, 2008) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)). Even assuming Plaintiff's speech was protected under the First Amendment, it is apparent from the face of the Complaint that a section 1983 claim on this basis is barred by the applicable four-year statute of limitations. Plaintiff's speech at issue occurred on April 18, 2003, when he was allegedly beaten for protesting Hoeflinger and Graham's treatment of Dennis Shelter. Any claim Plaintiff had under section 1983 for violation of his First Amendment rights accrued then - Plaintiff's claim filed on March 3, 2008 is thus untimely.

### 3.    RICO

Plaintiff also invokes RICO in Count VII against the City of Hollywood, which provides civil and criminal liability for those engaged in "a pattern of racketeering activity." *See* 18 U.S.C. § 1962(a)-(d). "The four elements of civil RICO liability are (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Plaintiffs in such an action must identify and prove a pattern of racketeering activity, defined as two 'predicate acts' of racketeering activity within a 10 year period." *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1311-12 (11th Cir. 2000) (citations omitted). Here, Plaintiff offers no allegations suggesting a pattern of "racketeering activity" as defined in the Act. Plaintiff also failed to file a RICO case statement, as required by Local Rule 12.1. In any case, Plaintiff conceded that RICO is not at issue here. *See* Pl.'s Resp. to Torres Mot. to Dismiss, D.E. #46 at 22 ("Plaintiff has not responded to [Torres'] Motion as to RICO claims and submits that the Defendant's position is well taken and that RICO claims are inappropriate for this action, unless the court determines otherwise.").

### 4.    Injunctive Relief

In Counts VIII and IX, Plaintiff seeks prospective injunctive and declaratory relief from the City of Hollywood. Specifically, in Count VIII Plaintiff seeks a variety of injunctions pertaining to the City's surveillance camera placement, its policies on preservation of evidence and self-defense,

and its treatment of prisoners, among other forms of injunctive relief.  In Count IX Plaintiff seeks a "declaration by this Court" that the City's policy "that a citizen may not resist unlawful force against that person, or another" is unconstitutional.   In general, prospective injunctive and declaratory relief is not necessarily *Heck*-barred.  *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997). However, "[t]o prevail, of course, [the plaintiff] must establish standing."  *Id.* (citations omitted).

In conducting its standing analysis, the Court starts by observing that "the federal courts are confined by Article III of the Constitution to adjudicating only actual 'cases' and 'controversies.'" *Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1346 (11th Cir. 1999) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)). "The Article III case or controversy requirement sets fundamental limits on the federal judiciary's power in our society."  *Id.*  One of the most important of such limits is the requirement that a litigant have "standing" to invoke a federal court's power.  *Id.*  "In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."  *Id.* (citations omitted).  The threat of this future injury cannot be abstract - rather, the plaintiff "must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (internal quotations and citations omitted).   "The remote possibility that a future injury may happen" is insufficient to satisfy the "actual controversy" requirement.  *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985); *see also, e.g.*, *Christopher v. Dep't of Highway Safety and Motor Vehicles*, 209 F. Supp. 2d 1290, 1292 (S.D. Fla. 2001) ("When a victim of alleged police misconduct seeks an injunction prohibiting future misconduct, his standing depends on a showing that he faces a real and immediate threat that he will again suffer from the misconduct.") (quoting *Lyons*, 461 U.S. at 105-06).  Here, Plaintiff has not offered, nor does it appear that he will ever be able to offer, *any* facts suggesting a substantial likelihood that he will suffer future injury as a result of the challenged

conduct.  Thus, he has not established standing to seek injunctive or declaratory relief.[6]

Further, to the extent Plaintiff seeks injunctive relief in Count VIII against the City of Hollywood based on Florida state law, he has not stated a prima facie case for injunctive relief.  That is, he has not alleged "ultimate facts which, if true, would establish (1) irreparable injury (that is, injury which cannot be cured by money damages), (2) a clear legal right, (3) lack of an adequate remedy at law and (4) that the requested injunction would not be contrary to the interest of the public generally."  *Weekley v. Pace Assembly Ministries, Inc.*, 671 So. 2d 220, 220 (Fla. 1st DCA 1996); *see also, e.g.*, *St. Lucie County v. St. Lucie Village*, 603 So. 2d 1289, 1292 (Fla. 4th DCA 1992).

**C.      Michael Satz, Scott Raft, and Brad Edwards**

At the time of the incidents alleged in the Complaint, Satz was the State Attorney for the 17th Judicial Circuit, and Raft and Edwards were assistant state attorneys.  Plaintiff sues Satz and Edwards in Count II, and Raft in Count IV, for violation of his due process right to a fair trial. Plaintiff sues Raft and Edwards in Count V for excessive force, failure to intervene and perjury, and sues Satz in Count VIII for injunctive relief.  Plaintiff also sues all three Defendants in Count I for "conspiracy," in Count III for violation of his due process rights and for perjury, and Count VI for "deprivation of liberty."

**1.      *Heck*, Pleading Issues, and Statute of Limitations**

To the extent Plaintiff seeks to recover from Satz, Raft, and Edwards based on due process violations at his criminal trial, those claims are subject to dismissal without prejudice based on *Heck* as discussed above with respect to Broward County.  *See supra* section III.A.  Further, the claims against Satz, Raft, and Edwards are subject to dismissal based on the pleading requirements of section 1985 and section 1986, the statute of limitations for section 1986, and the absence of a private cause of action for under 18 U.S.C. § 1512(a)(2)(B)(i), (ii), and (iv).  *See id.*

---

[6]  In Counts VIII and IX Plaintiff seeks relief on behalf of himself and third parties.  *See* Compl. ¶ 98.  Even if Plaintiff had met the "case or controversy" requirement in Counts VIII and IX, he would still only be able to assert his own rights, not the "legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see, e.g.*, *Knight v. State of Ala.*, 14 F.3d 1534, 1554 (11th Cir. 1994) (noting that, with exceptions not applicable here, the Supreme Court requires "parties assert only their own rights and not those of others") (citations omitted).

### 2.    Prosecutorial Immunity

Plaintiff's claims against Raft and Edwards are also barred by those Defendants' prosecutorial immunity.  "A prosecutor is entitled to absolute immunity for all actions he takes while performing his function as an advocate for the government.  The prosecutorial function includes the initiation and pursuit of criminal prosecution, and most appearances before the court, including examining witnesses and presenting evidence." *Rivera v. Leal*, 359 F.3d 1350, 1353 (11th Cir. 2004) (citations omitted); *see Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) ("We hold . . . that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983.").  "Generally, prosecutorial actions that occur in court are shielded by absolute immunity, even where the prosecutor knowingly proffers perjured testimony or fabricated exhibits." *Rivera*, 359 F.3d at 1354 (citations omitted).

Here, Plaintiff seeks to recover from Raft and Edwards based on their conduct in prosecuting his criminal case, such as suppressing exculpatory evidence, misleading the court in the course of their prosecution (Compl. ¶¶ 41, 44), filing a motion based on "pretext," (*id.* ¶ 43), and submitting and/or commissioning falsified evidence (*id.* ¶ 48).  These are all actions for which Raft and Edwards enjoy absolute prosecutorial immunity.  *See, e.g.*, *Porter*, 483 F.3d at 1305 n.8 ("Injury flowing from a procedural due process violation (i.e., incarceration following a constitutionally unfair trial) that results from a prosecutor's failure to comply with the Brady rule cannot be redressed by a civil damages action against the prosecutor under § 1983 because the prosecutor is absolutely immune from such liability.") (citations omitted); *see also, e.g.*, *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279-80 (11th Cir. 2002) (stating that under the principles of prosecutorial immunity, "it is clear that, even if [the prosecutor] knowingly proffered perjured testimony and fabricated exhibits at trial, he is entitled to absolute immunity from liability for doing so").  In his response to Raft and Edwards' Motion to Dismiss Plaintiff focuses on their *intent*, but this is irrelevant to the absolute immunity analysis.  *See Imbler*, 424 U.S. at 427-28 ("[Prosecutorial immunity] does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest.").

Plaintiff argues that prosecutorial immunity should not apply to Edwards because he acted as an "investigator," not prosecuting attorney, citing to *Buckley v. Fitzsimmons*. 509 U.S. 259 (1993); *see* D.E. #42 at 4. According to *Buckley*, when a prosecutor performs the investigative functions typically performed by a police officer, the prosecutor enjoys only qualified immunity. *Id.* at 273 ("There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial . . . and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested . . . ."); *see also, e.g., Rivera,* 359 F.3d at 1353. However, the Complaint does not contain allegations that Edwards (or Raft or Satz, for that matter) acted in such an investigative capacity, gathering evidence to support probable cause to arrest Plaintiff.[7]

### 3.    Supervisory Liability

Insofar as Plaintiff attempts to recover from Satz based on his supervision of Raft and Edwards, those claims fail as well. "It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (citation and quotation omitted). Supervisory liability under section 1983 will lie "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). "The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Id.* Here, Plaintiff vaguely alleges that Satz conducted an investigation, the findings of which "should have been conclusive." Compl. ¶ 38. This is insufficient to satisfy even the notice pleading standard of Federal Rule of Civil Procedure 8, much

---

[7]   The Complaint also charges Raft and Edwards with perjury and "testifying" falsely at evidentiary hearings on November 19, 2004 and October 19, 2007. Compl. ¶¶ 26, 42, 50. However, it is well-settled that witnesses enjoy absolute immunity for civil actions for their testimony in a judicial proceeding, even if false. *See Briscoe v. LaHue*, 460 U.S. 325 (1983); *see also, e.g., Jones v. Cannon*, 174 F.3d 1271, 1286 (11th Cir. 1999). The same applies to those who allegedly procure perjured testimony. *Id.* at 1289.

less the applicable heightened pleading standard.[8]  In sum, there are insufficient allegations against Satz to establish supervisory liability under section 1983.[9]

### 4.    Injunctive Relief

Finally, Plaintiff's claim for injunctive relief against Satz in Count VIII is subject to dismissal for the reasons explained above with respect to the City of Hollywood.  *See supra* section III.B.

## D.    Howard Finkelstein

Plaintiff seeks to recover from Finkelstein, the Public Defender for the 17th Judicial Circuit, in Count I for "conspiracy" to violate his constitutional rights to due process, equal protection under the law, and to be free from cruel and unusual punishment, in Counts II and III for violation of his due process rights and his right to reasonably effective assistance of counsel, in Count VI for "deprivation of liberty," and in Count VIII for injunctive relief that requires Finkelstein to locate Plaintiff's criminal trial file and turn it over to him or his attorney, and also to lodge bar complaints against Torres and Schweiker.

### 1.    *Heck*

The right to effective assistance of counsel is guaranteed by the Sixth Amendment - it is "denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense."  *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) and *Strickland v. Wash.*, 466 U.S. 668, 687 (1984)).  However, Plaintiff is *Heck*-barred from bringing an ineffective assistance claim against Finkelstein.  *See, e.g.*, *Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995) (holding the plaintiff's Sixth Amendment ineffective assistance of counsel claim against public defenders barred by *Heck*, as it "necessarily impl[ied] the invalidity of his conviction and because he did not show that his

---

[8]  This circuit imposes a heightened pleading standard on claims under section 1983 brought against individuals or entities capable of asserting a qualified immunity defense.  *See GJR Invs.*, 132 F.3d at 1367; *Swann*, 388 F.3d 834.  Under the heightened pleading standard, the plaintiff must go beyond the notice pleading standard of Rule 8 and "allege with some specificity the facts which make out [his or her] claim."  *GJR Invs.*, 132 F.3d at 1367.  Indeed, "[s]ome factual detail in the pleadings is necessary to the adjudication of § 1983 claims" where the defendant may assert qualified immunity.  *Id.*

[9] Of course, if the basis of this claim is that Plaintiff's due process rights were violated in the course of his criminal trial, it is also *Heck*-barred.  *See supra* section III.A.

conviction has been invalidated"); *Stephenson v. Reno*, 28 F.3d 26, 27 (5th Cir. 1994) (applying *Heck* bar to federal prisoner's claim for ineffective assistance of counsel against public defender); *see also Bell v. Ga.*, 138 Fed. Appx. 295 (11th Cir. 2005) (affirming dismissal ineffective assistance of counsel claim based on *Heck* to the extent that claim was brought under section 1983, because state convictions had not been overturned). *See supra* section III.A.[10]

> **2.      Pleading Issues and Statute of Limitations**

The claims against Finkelstein are also subject to dismissal based on the pleading requirements of section 1985 and section 1986, the statute of limitations for section 1986, and the absence of a private cause of action for under 18 U.S.C. § 1512(a)(2)(B)(i), (ii), and (iv). *See supra* section III.A.

> **3.      State Actor Question**

Plaintiff seeks to recover from Finkelstein for his role as his attorney in the criminal trial. "In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001) (citation omitted). The Supreme Court has held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *see also, e.g.*, *Pearson v. Myles*, 189 Fed. Appx. 865, 866 (11th Cir. 2006) (affirming dismissal of section 1983 action against public defender as she was "performing traditional lawyer functions in her representation" of the plaintiff, citing *Polk County*). This is because public defenders performing traditional defense functions occupy the same position as private defense attorneys in the relevant ways. *Polk County*, 454 U.S. at 319-25; *see also, e.g.*, *Gardner v. Luckey*, 500 F.2d 712, 714 n.3 (5th Cir. 1974) ("The no state action theory stems from the idea that a public defender, although paid by the state, actually opposes the state in a particular case and owes allegiance solely to his

---

[10] Unpublished opinions of the Eleventh Circuit "are not considered binding precedent, but they may be cited as persuasive authority." Eleventh Circuit Rule 36-2.

client.").[11]

However, "private defendants can be held liable in a § 1983 action if they act in concert with the state officials in depriving a plaintiff of constitutional rights." *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) (citations omitted). There are very few facts in the Complaint that could support such an allegation - among them is the suggestion that Finkelstein intentionally lost a potentially exculpatory piece of evidence to give advantage to the prosecuting attorneys. Compl. ¶¶ 26, 32, 41. Drawing all reasonable inferences in Plaintiff's favor, considering Plaintiff's pro se status, and noting that the heightened pleading standard does not apply to this claim because Finkelstein could not assert qualified immunity,[12] the Court finds that Plaintiff could state a claim under section 1983 against Finkelstein for ineffective assistance of counsel to the extent Finkelstein himself actually served as counsel for Plaintiff. Thus, this claim may be refiled if Plaintiff can cure the *Heck* defect discussed above, and any other pleading deficiencies discussed herein.

### 4.    Injunctive Relief

Finally, Plaintiff's claim for injunctive relief against Finkelstein in Count VIII is subject To dismissal for the reasons explained above with respect to the City of Hollywood and Satz. *See supra* section III.B, C. Additionally, assuming Plaintiff brings his claims in Count VIII to force Finkelstein to "locate the entire file of the Plaintiff and to turn over their [sic] entire file over to the Plaintiff or the Plaintiff's attorney" and to force Finkelstein to submit a bar complaint as to Torres and Schweiker under section 1983, those claims fail because Plaintiff does not identify any federal right violated by Finkelstein.

---

[11] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) ("We hold that the decisions of the United States Court of Appeals for the Fifth Circuit . . . as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit . . . .").

[12] *See Burrell v. Bd. of Trustees of Ga. Military Coll.*, 970 F.2d 785, 796 (11th Cir. 1992) ("[p]rivate defendants who allegedly conspired with public officials to deprive another of her constitutional rights . . . are not entitled to qualified immunity under section 1983").

**E.     Al Lamberti**

Plaintiff sues Al Lamberti, the Sheriff of Broward County, in Count I for "conspiracy against the rights of the plaintiff," in Count V for excessive force, failure to intervene, and perjury, and in Count VI for "deprivation of liberty."

**1.     *Heck***

To the extent Plaintiff seeks to recover from Lamberti based on due process violations at his criminal trial, those claims are subject to dismissal based on *Heck* as discussed above with respect to Broward County. *See supra* section III.A. To the extent Plaintiff sues Lamberti in Counts I and V based on his allegations of excessive force on April 18, 2003 under the Fourth, Eighth, and Fourteenth Amendments, that claim is not *Heck*-barred.[13] This is because Plaintiff's claim of excessive force does not necessarily call into question his conviction for battery on a law enforcement officer. "The elements of battery on a law enforcement officer are 1) knowingly 2) actually 3) intentionally 4) touching or striking 5) against the will 6) of a law enforcement officer 7) engaged in the lawful performance of his duties." *State v. Henriquez*, 485 So. 2d 414, 415 (Fla. 1986); *see* Fla. Stat. §§ 784.03, 784.07. It is possible that Plaintiff both committed battery on a law enforcement officer *and* was subjected to excessive force in violation of the Fourth or Fourteenth Amendments. *See, e.g.*, *Hadley*, 2008 WL 1947008, at *4-5; *Dyer v. Lee*, 488 F.3d 876, 878-80

_____

[13] It is not entirely clear from the Complaint whether Plaintiff's excessive force claim arises under the Fourth or Fourteenth Amendment. "Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . . ." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "Fourteenth Amendment analysis does not begin until 'after the incidents of arrest are completed, after the plaintiff has been released from the arresting officer's custody, and after the plaintiff has been in detention awaiting trial for a significant period of time.'" *Garrett v. Athens-Clarke County, Ga.*, 378 F.3d 1274, 1279 n.11 (11th Cir. 2004) (quoting *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998)). It appears from the allegations that Plaintiff had already been arrested at the time he was allegedly subjected to excessive force, and was being held at the City of Hollywood Police Department facility, but it is not clear how long he had been held. However, as it appears from the Complaint that Plaintiff had not yet been convicted when he was allegedly subjected to such force, the Eighth Amendment does not apply. *See, e.g.*, *Lumley v. City of Dade City, Fla.*, 327 F.3d 1186, 1196 (11th Cir. 2003) (stating that the "Eighth Amendment's Cruel and Unusual Punishment Clause [applies to] claims by convicted prisoners") (internal quotation and citation omitted).

(11th Cir. 2007).  However, although not *Heck*-barred to the extent they are based on excessive force, Plaintiff's claims against Lamberti are defective for other reasons discussed below.

**2.      Statute of Limitations**

Section 1983 claims are "governed by the forum state's residual personal injury statute of limitations" - in Florida, that time period is four years.  *Burton v. City of Belle Glade*, 178 F.3d 1175, 1188 (11th Cir. 1999) (citations omitted); *see Wallace v. Kato*, 127 S. Ct. 1091, 1094 (2007).  The limitations clock begins running when plaintiffs "know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003); *see also, e.g.*, *Rozar v. Mullis*, 85 F.3d 556, 561-62 (11th Cir. 1996) (the section 1983 statute of limitations does not begin to run "until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights") (internal quotation and citations omitted).  Here, Plaintiff alleges he was subjected to excessive force on April 18, 2003.  Based on his alleged facts, Plaintiff knew of the force to which he was subjected, and who inflicted it, at that time.  Plaintiff also complains of the conditions of confinement for the six weeks after April 18, 2003, of which he was presumably aware during the time of his confinement (although it is not clear at which Defendant this claim is directed because Plaintiff does not allege *where* he was confined - *see* Compl. ¶ 88).  In any case, because Plaintiff did not bring his section 1983 action until March 3, 2008, his excessive force and conditions of confinement claims are time-barred and dismissed with prejudice.[14]

**3.      Pleading Issues**

The claims against Lamberti are also subject to dismissal based on the pleading requirements of section 1985 and section 1986, the statute of limitations for section 1986, and the absence of a private cause of action for under 18 U.S.C. § 1512(a)(2)(B)(i), (ii), and (iv).  *See supra* section III.A.

**4.      Pleading Liability in Official and Personal Capacity**

Insofar as Plaintiff sues Lamberti in his official capacity, those claims are in fact claims against the entity Lamberti represents.  *See Ky. v. Graham*, 473 U.S. 159, 165 (1985)

---

[14] The same statute of limitations applies to claims under section 1985.  *See, e.g.*, *Chappell*, 340 F.3d at 1283 ("Florida's four-year statute of limitations applies to such claims of deprivation of rights under [section 1985].").

("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citations and quotations omitted); *see also, e.g.*, *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999).  Indeed, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Ky. v. Graham*, 473 U.S. at 166 (citation omitted). The Eleventh Circuit has recognized that its "decisions have not been entirely consistent on whether the relevant entity in an official-capacity suit against a sheriff in Florida is the County or the Sheriff's Department (as a unit operating autonomously from the County)." *Brown v. Neumann*, 188 F.3d at 1290 n.2; *see also Seraphin v. Parapella*, 489 F. Supp. 2d 1354, 1357-58 (S.D. Fla. 2007) (noting the lack of clarity in this area, but ultimately holding that a suit against the Broward County Sheriff in his official capacity was in fact a suit against Broward County itself).  However, regardless of whether Plaintiff's claims against Lamberti in his official capacity are in fact claims against the Broward Sheriff's Department or Broward County itself, they fail. "Sheriff's departments and police departments are not usually considered legal entities subject to suit," *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992), and the Court has already explained why a section 1983 claim against Broward County itself fails, *see supra* section III.A.

To the extent Plaintiff sues Lamberti in his personal capacity for actions he took "under color of state law" that "caused the deprivation of a federal right," *Ky. v. Graham*, 473 U.S. at 166, those claims are also subject to dismissal.  There are no allegations that Lamberti took any actions himself that caused a deprivation of any of Plaintiff's federal rights.  Further, the mere fact that Lamberti may have been Companion and Smith's superior is insufficient to state a claim against Lamberti personally. *See, e.g.*, *Hutton v. Strickland*, 919 F.2d 1531, 1540 n.14 (11th Cir. 1990) (noting that "vicarious liability may not be the basis for recovery against a sheriff for acts of his subordinates under section 1983, unless he was involved personally").  This is particularly true given that Lamberti is entitled to qualified immunity, and thus the heightened pleading standard applies. *See GJR Invs.*, 132 F.3d at 1367.

## F.    Madeleine Torres

Plaintiff sues Torres, his court-appointed public defender in his state criminal trial, in Count I for "conspiracy" to violate his constitutional rights to due process, equal protection under the law,

to be free from cruel and unusual punishment, and to a fair trial, in Count II for violation of his rights to due process, fair trial, and reasonably effective assistance of counsel, in Count III for violation of his rights to due process, fair trial, and perjury, and in Count VI for "deprivation of liberty."

### 1.    *Heck*

With respect to any claims against Torres based on Plaintiff's rights to due process at his criminal trial, they are *Heck*-barred for the reasons described above.  *See supra* section III.A. Further, a finding by the Court that Torres rendered ineffective assistance of counsel to Plaintiff would also go to the constitutionality of the trial, and would impugn his conviction for battery.  Thus, that claim is *Heck*-barred as well.  *See, e.g.*, *St. Germain*, 98 F. Supp. 2d at 1373 (applying *Heck* bar to claim that the plaintiff's public defenders failed to provide adequate representation in his criminal trial where his underlying conviction was still in place).

### 2.    **Pleading Issues and Statute of Limitations**

The claims against Torres are also subject to dismissal based on the pleading requirements of section 1985 and section 1986, the statute of limitations for section 1986, and the absence of a private cause of action for under 18 U.S.C. § 1512(a)(2)(B)(i), (ii), and (iv).  *See supra* section III.A.

### 3.    **State Actor Question**

As explained above with respect to Finkelstein, as a public defender Torres is generally not considered a state actor for section 1983 purposes.  *See supra* section III.D.  However, "private defendants can be held liable in a § 1983 action if they act in concert with the state officials in depriving a plaintiff of constitutional rights." *Bendiburg*, 909 F.2d at 468.  Here, it appears Plaintiff has alleged facts suggesting Torres worked in concert with the prosecuting attorneys to deprive him of his constitutional rights.  For example, Plaintiff alleges that Torres worked with Edwards to "force" Plaintiff to plead guilty to the charges against him and intentionally failed to present a defense because she was allied with the prosecution. Compl. ¶¶ 50, 51.  Thus, as with Finkelstein, the Court finds that Plaintiff could state a claim against Torres for ineffective assistance of counsel if he can cure the *Heck* defect and other pleading deficiencies discussed above.

### 4.    **Witness Immunity**

The Complaint also states that in the course of two separate evidentiary hearings, held on November 19, 2004 and October 19, 2007, Torres gave false "testimony." *Id.* ¶¶ 28, 35, 65, 72.  To

the extent Torres gave testimony under oath at those proceedings, she is absolutely immune from civil liability on the basis of any false testimony. *See supra* section III.C; *Briscoe*, 460 U.S. 325.

**G.     Joseph Companion and Jimmy Smith**

Plaintiff sues Companion and Smith in Count I for "conspiracy" to violate his constitutional rights to due process, equal protection under the law, to be free from cruel and unusual punishment, and to a fair trial, in Count V for excessive force, failure to intervene, and perjury, and in Count VI for "deprivation of liberty."

**1.     *Heck***

With respect to the claims against Companion and Smith pertaining to the use of force on April 18, 2003, Plaintiff claims that Companion and Smith observed Plaintiff being beaten and did not intervene. In theory, such a claim is cognizable under section 1983. *See, e.g.*, *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985) ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force[] can be held liable for his nonfeasance.") (citations omitted). Plaintiff's "failure to intervene" claims against Companion and Smith are not *Heck*-barred, as they do not necessarily call into question his conviction for battery on a law enforcement officer. However, such claims are barred by the applicable statute of limitations. As explained above (*see supra* section III.C), the four-year limitations clock on these section 1983 claims began to run when Plaintiff knew or should have known he suffered an injury and who inflicted the injury. *See Chappell*, 340 F.3d at 1283. Plaintiff should reasonably have known on April 18, 2003 that Companion and Smith failed to intervene, yet he did not bring his claims until March 3, 2008. Thus, those claims are time-barred and dismissed with prejudice.

**2.     Pleading Issues and Statute of Limitations**

The claims against Companion and Smith are also subject to dismissal based on the pleading requirements of section 1985 and section 1986, the statute of limitations for section 1986, and the absence of a private cause of action for under 18 U.S.C. § 1512(a)(2)(B)(i), (ii), and (iv). *See supra* section III.A.

26

### 3. Heightened Pleading Standard

Further, Plaintiff's claims relating to Companion and Smith's failure to intervene are also subject to dismissal because they fail to meet the applicable heightened pleading standard. *See GJR Invs.*, 132 F.3d at 1367; *Swann*, 388 F.3d 834. Here, Plaintiff alleges that Companion and Smith observed Plaintiff being beaten and did not intervene. Plaintiff pleads that either Companion or Smith retreated town a hallway to guard the entrance to the room in which Plaintiff was being held, to ensure no one would enter, but does not specify which. Compl. ¶ 56. Such vague and conclusory allegations do not give Companion and Smith "fair notice" of Plaintiff's claims are or the grounds upon which they rest. *Twombly*, 127 S. Ct. at 1964.

### 4. Witness Immunity

Finally, insofar as Plaintiff seeks to recover under section 1983 based on perjury at trial and in pretrial depositions (Compl. ¶ 57), he cannot - as explained above, witnesses, whether private citizens or law enforcement officers, are absolutely immune from civil liability for their testimony. *See supra* section III.C; *Briscoe*, 460 U.S. 325.

## H. Forrest Jeffries, Francis Hoeflinger, Barbara Mannix, and John Graham[15]

During the relevant time, Jeffries, Hoeflinger, Mannix, and Graham were police officers with the City of Hollywood. Plaintiff sues all four officers in Count I for "conspiracy against the rights of the plaintiff," and in Count VI for "deprivation of liberty." Plaintiff also sues Jeffries, Hoeflinger, and Graham in Count III for violation fo his due process right to a fair trial and in Count VII for "first amendment, and conspiracy to thwart detection civil RICO, retaliation against a witness," and sues Hoeflinger and Graham in Count V for excessive force, failure to intervene, and perjury.

### 1. Heck

To the extent Plaintiff seeks to recover from Jeffries, Hoeflinger, Mannix, and Graham based on due process violations at his criminal trial, those claims are subject to dismissal based on *Heck*

---

[15] Plaintiff moved to strike Jeffries, Hoeflinger, and Mannix's Motion to Dismiss on the basis that it was untimely. *See* D.E. #63. In response, these Defendants concede that they filed their Motion four days late, but argue that Plaintiff was not prejudiced and ask the Court, in its discretion, not to strike their Motion. *See* D.E. #68. Because it is most consistent with the interest of judicial economy, the Court will exercise its discretion to consider the merits of these Defendants' Motion to Dismiss in this Omnibus Order.

as discussed above with respect to Broward County.  *See supra* section III.A.  To the extent Plaintiff seeks to recover from Hoeflinger and Graham based on his allegations of excessive force in Count V, those claims are not *Heck*-barred, but do run afoul of the applicable statute of limitations.  *See supra* section III.G.

### 2.    Pleading Issues, RICO, and the Statute of Limitations

The claims against Hoeflinger, Mannix, and Graham are also subject to dismissal based on the pleading requirements of section 1985, section 1986, and RICO, the statute of limitations for section 1986, and the absence of a private cause of action for under 18 U.S.C. § 1512(a)(2)(B)(i), (ii), and (iv).  *See supra* section III.A, section III.B.

### 3.    Heightened Pleading Standard

The claims against Mannix are subject to dismissal for an additional reason: they fail to satisfy the applicable heightened pleading standard.  The Complaint alleges only that Mannix drafted a police report (*id.* ¶ 46) and makes a conclusory reference to her "altering" a surveillance video (*id.* ¶ 13).  Such allegations are insufficient to state a claim against her under section 1983.

### 4.    Witness Immunity

Insofar as Plaintiff seeks to recover under section 1983 based on Hoeflinger and Graham's false testimony at trial (*id.* ¶ 54) or Jeffries' false testimony at trial and in pretrial depositions (*id.* ¶¶ 36, 55, 57), they are absolutely immune from civil liability for such their testimony.  *See supra* section III.C; *Briscoe*, 460 U.S. 325.

## I.    Larry Schweiker

Plaintiff sues Schweiker, his court-appointed public defender in his state criminal trial, in Count I for "conspiracy" to violate his constitutional rights to due process, equal protection under the law, to be free from cruel and unusual punishment, and to a fair trial, in Count II for violation of his rights to due process, fair trial, and effective assistance of counsel, in Count III for violation of his rights to due process, fair trial, and perjury, and in Count VI for "deprivation of liberty."

### 1.    *Heck*

With respect to any claims against Schweiker based on Plaintiff's rights to due process at his criminal trial, they are *Heck*-barred for the reasons described above.  *See supra* section III.A. Further, a finding by the Court that Schweiker rendered ineffective assistance of counsel to Plaintiff

would also go to the constitutionality of the trial, and would impugn his conviction for battery. Thus, that claim is *Heck*-barred as well. *See, e.g.*, *St. Germain*, 98 F. Supp. 2d at 1373; *supra* section III.F.

### 2. Pleading Issues and Statute of Limitations

The claims against Schweiker are also subject to dismissal based on the pleading requirements of section 1985 and section 1986, the statute of limitations for section 1986, and the absence of a private cause of action for under 18 U.S.C. § 1512(a)(2)(B)(i), (ii), and (iv). *See supra* section III.A.

### 3. State Actor Question

As explained above with respect to Finkelstein and Torres, as a public defender Schweiker is generally not considered a state actor for section 1983 purposes. *See supra* section III.D. However, "private defendants can be held liable in a § 1983 action if they act in concert with the state officials in depriving a plaintiff of constitutional rights." *Bendiburg*, 909 F.2d at 468. Here, it appears Plaintiff alleged facts suggesting Schweiker worked in concert with the prosecuting attorneys to deprive him of his constitutional rights. For example, Plaintiff alleges that Schweiker worked with Edwards to "force" Plaintiff to plead guilty and intentionally failed to present a defense because he was allied with the prosecution. Compl. ¶¶ 50, 51. Thus, as with Finkelstein and Torres, the Court finds that Plaintiff could state a claim against Schweiker for ineffective assistance of counsel if he can cure the *Heck* defect and other pleading deficiencies discussed above.

### IV. CONCLUSION

For the reasons stated above, it is hereby ORDERED AND ADJUDGED that

1) Broward County's Motion to Dismiss Plaintiff's Verified Complaint (D.E. #8) is GRANTED;

2) City of Hollywood's Motion to Dismiss (D.E. #10) is GRANTED;

3) Michael Satz, Scott Raft, and Brad Edwards' Motion to Dismiss (D.E. #15) is GRANTED;

4) Howard Finkelstein's Amended Motion to Dismiss (D.E. #17) is GRANTED;

5) Al Lamberti's Motion to Dismiss (D.E. #29) is GRANTED;

6) Madeleine Torres' Motion to Dismiss (D.E. #34) is GRANTED;

7)      Joseph Companion and Jimmy Smith's Motion to Dismiss (D.E. #37) is
        GRANTED;

8)      Forrest Jeffries, Francis Hoeflinger, and Barbara Mannix's Motion to
        Dismiss (D.E. #50) is GRANTED;

9)      John Graham's Motion to Dismiss (D.E. #58) is GRANTED; and

10)     Larry Schweiker's Motion to Dismiss (D.E. #71) is GRANTED.

Insofar as Plaintiff's claims were held subject to dismissal based on the applicable statute of

limitations, standing, or a form of absolute immunity, they are dismissed WITH PREJUDICE.

Insofar as Plaintiff's claims were held subject to dismissal based on *Heck*, they are dismissed

WITHOUT PREJUDICE to be refiled if and when Plaintiff can establish that his battery conviction

has been invalidated.  Insofar as Plaintiff's claims were held subject to dismissal based on any other

basis, they are dismissed WITHOUT PREJUDICE.[16]

DONE and ORDERED in Chambers at Miami, Florida this June 17, 2008.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of Record

Donald Baker, *pro se*
3300 N. State Road 7 (A-77)
Hollywood, Florida 33021

_____

[16] If and when Plaintiff refiles the claims that are dismissed without prejudice, he is instructed that while pro se litigants such as Plaintiff are accorded some leniency, they are still required to abide by courts' procedural rules.  *See, e.g.*, *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002).  Thus, Plaintiff should review the Federal Rules of Civil Procedure and the Local Rules for the Southern District of Florida, such as Local Rule 7.1(C) prescribing that "[a]bsent prior permission of the Court, no party shall file any legal memorandum exceeding twenty pages in length, with the exception of a reply which shall not exceed ten pages in length," and Federal Rule 8(a)(2) prescribing that a plaintiff provide "a short and plain statement of the claim" showing that he is entitled to relief in his pleadings. Plaintiff is also reminded that he may not offer new factual allegations or bring new legal claims in response to a motion to dismiss.

30